UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
EX REL. R.C. TAYLOR, III

    Plaintiff,

v.

MARIO GABELLI, et al.

    Defendants.

Civ. No. 01-333 (CKK)

FILED
OCT - 2 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEMORANDUM OPINION**
(October 2, 2003)

Presently before the Court is Defendants'[1] Motion to Transfer this action pursuant to 28

---

[1] The moving Defendants include: Lynch Interactive Corp.; Lynch PCS Communications Corp.; Lynch PCS Corporation A; Lynch PCS Corporation B; Lynch PCS Corporation C; Lynch PCS Corporation D; Lynch PCS Corporation E; Lynch PCS Corporation F; Lynch PCS Corporation H; Lynch Paging Corp.; Lynch Corp.; Fortunet Wireless Communications Corp.; Aer Force Communications, Inc.; Aer Force Communications, LP; New England Wireless Communications, LP; New England Wireless Communications Corp.; Southeast Wireless Communications, LP; Southeast Wireless Communications Corp.; Forunet Wireless Communications, LP; Fortunet Communications, LP; High Country Communications Corp.; High Country Communications, LP; Aer Force Communications II, LP; BAL/Rivgam, LLC; ABC-LMDS, LLC; BCDJMS, LLC; BCK/Rivgam, LLC; Beta Communications, LLC; Theta Communications, LLC; Theta Communications I, LLC; Theta Communications II, LLC; Theta Communications IA, LLC; PTPMS Communications, LLC; PTMPS II Communications, LLC; Beta Page Communications, LLC; Sunshine PCS Corp.; Alfred Angelo; Karen Johnson; Victoria Kane; James Balitsos; Marie Balitsos; T. Gibbs Kane; Nara Cadorin; Clarence Davis; Kathleen Sugarman; Gary Sugarman; Katherine Stafford; Trent Tucker; Keith Mantle; Kuni Nakamura; Jennifer Caiati; Nancy Vanneck; and Thomas Wilson. The Court notes that moving Defendants listed Fortunet Communcations, LP twice as a Defendant in their moving papers. *See, e.g.*, Defs.' Mot. to Transfer at 1 n.1. The other Defendants in this action did not join in, or file in opposition to, this motion. These non-moving Defendants include: Mario Gabelli; GAMCO Investors, Inc.; Gabelli Funds, Inc.; Gabelli Group Capital Partners, Inc.; Rivgam Communicators, Inc.; Rivgam Communicators, LLC; and Rivgam LMDS, LLC.



U.S.C. § 1404(a). Relator R.C. Taylor, III ("Plaintiff-Relator")[2] filed this *qui tam* action in the United States District Court for the District of Columbia, alleging violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* After reviewing Defendants' Motion to Transfer, Plaintiff-Relator's Opposition, Defendants' Reply, and the applicable law, the Court shall grant Defendants' Motion and transfer the case to the United States District Court for the Southern District of New York.

## I. BACKGROUND

Plaintiff-Relator filed this *qui tam* action in the United States District Court for the District of Columbia, alleging violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* The Amended Complaint alleges that Defendants, "a group of sophisticated companies and individuals[,] . . . knowingly defrauded the U.S. Treasury in connection with the Federal Communication [sic] Commission's . . . public auction of spectrum licenses from 1995 to date." Am. Compl. ¶ 2. As stated in the Amended Complaint, "[D]efendants engaged in a complex and longstanding scheme to obtain federal 'small business' discounts and spectrum licenses" that they allegedly were ineligible to receive. *Id.* Specifically, Defendant Mario Gabelli "carried out this fraud through numerous sham bidder-entities that purported to qualify as 'small' and 'very small' business enterprises." *Id.* ¶ 3. In some instances, the Amended Complaint alleges that these "small business" entities existed only on paper, *e.g.*, *id.* ¶ 4, but regardless of the state of their material existence, according to the Amended Complaint, these "sham" businesses were under the *de facto* control of Defendant Gabelli, *see, e.g., id.* ¶ 4, 5, 7. Because Defendants

---

[2] Technically, R.C. Taylor, III is the Relator in this action and the United States is the Plaintiff. However, given that Taylor is pursuing this action, the Court will refer to him as Plaintiff-Relator.

obtained sizable "'small business' discounts and restricted-eligibility licenses for which they were not qualified[, a]s a direct consequence, the U.S. Treasury has suffered many tens of millions of dollars in damages." *Id.* ¶ 10.

On September 19, 2002, Defendants moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). *See, e.g.*, Defs.' Mot. to Dismiss at 2. Also on September 19, 2002, moving Defendants[3] filed the present Motion to Transfer pursuant to 28 U.S.C. § 1404(a). The Court's present inquiry is limited to those matters pertinent to resolving moving Defendants' Motion to Transfer.

## II. LEGAL STANDARD

Where venue is proper but inconvenient, Section 1404(a) provides for "easy transfer of actions to a more convenient federal forum." 17 James Wm. Moore, *Moore's Federal Practice* § 111.11 (3d ed. 2003); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (stating that Section 1404(a) was enacted to allow "easy change of venue"). The text of Section 1404(a) provides: "For convenience of [1] parties and witnesses, [2] in the interest of justice, a district court may transfer any civil action to any other district or division [3] where it might have been brought." 28 U.S.C. § 1404(a). The Supreme Court has interpreted the third requirement of the statute ("where it might have been brought") to "mean that the proposed transferee district must be one in which the plaintiff properly could have filed the action initially." 17 James Wm. Moore, *Moore's Federal Practice* § 111.12[1][a] (3d ed. 2003) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960); *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964)). Accordingly, the transferor district must determine whether, at the time the action was originally filed:

---

[3] *See supra* note 1.

(1) venue would have been proper in the proposed transferee district; (2) the transferee court would have had subject-matter jurisdiction; and (3) the transferee court could have exercised personal jurisdiction over the defendant.

*Id.* (citing *Packer v. Kaiser Foundation Health Plan*, 728 F. Supp. 8, 11 (D.D.C. 1989) (observing that the transferor court must determine whether the transferee court would have subject matter jurisdiction, proper venue, and personal jurisdiction over defendants)) (footnotes omitted).[4]

After dispensing with this threshold inquiry, the text of Section 1404(a) commands the transferor court to determine whether transferring the action will accomplish the following: "(1) enhance the convenience of the parties, (2) enhance the convenience of the witnesses, and (3) be in the interest of justice." 17 James Wm. Moore, *Moore's Federal Practice* § 111.13[1][b] (3d ed. 2003); *see also* 28 U.S.C. § 1404(a). "As a general matter, the burden is on the party seeking transfer to demonstrate that the 'balance of convenience of the parties and witnesses and the interest of justice are in its favor.'" *Thayer/Patricof Ed. Funding, LLC v. Pryor Resources*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (quoting *Armoco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991), in turn quoting *Consolidated Metal Products, Inc. v. American Petroleum Inst.*, 569 F. Supp. 773, 774 (D.D.C. 1983)) (brackets omitted). "A court has broad discretion to determine where the proper balance lies and whether a case should be transferred." *Id.* (citing *Rhees Bros. Inc. v. Seoul Shik Poom, Inc.*, 869 F. Supp. 31, 33-34 (D.D.C. 1994)).

Courts have looked to a variety of factors thought to have a bearing on whether a case

---

[4] The parties did not raise the threshold inquiry issue when they briefed the motion to transfer. Fortunately, Defendants raised the issue of subject matter jurisdiction in their motions to dismiss, which was adequately briefed by both parties. Therefore, the Court will look to Defendants' motions to dismiss when it considers whether the Southern District of New York would have subject matter jurisdiction over this case.

should be transferred under Section 1404(a). *See* 17 James Wm. Moore, *Moore's Federal Practice* § 111.13[1][b] (3d ed. 2003) (listing fourteen factors that District Courts have looked to when deciding a motion to transfer). In addition, the United States District Court for the District of Columbia has looked to private and public interests, including:

> [1] the convenience of the witnesses of plaintiff and defendant; [2] ease of access to sources of proof; [3] availability of compulsory process to compel the attendance of unwilling witnesses; [4] the amount of expense for willing witnesses; [5] the relative congestion of the calendars of potential transferor and transferee courts; and [6] other practical aspects of expeditiously and conveniently conducting a trial.

*Gemological Inst. of America, Inc. v. Thi-Dai Phan*, 145 F. Supp. 2d 68, 71 (D.D.C. 2001); *cf. Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 71 (D.D.C. 1998) (observing that the private interest considerations include, among other things, "the convenience of the witnesses . . . , but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"). The District of Columbia District Court has wavered as to whether "[t]he most critical factor . . . is the convenience of the witnesses," *Pyrocap Int'l Corp. v. Ford Motor Co.*, 259 F. Supp. 2d 92, 97 (D.D.C. 2003) (quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1996)), or the plaintiff's choice of forum, which has been described as a "paramount consideration," *Thayer/Patricof Ed. Funding*, 196 F. Supp. 2d at 31 (quoting *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997)). Despite these competing principal factors, it appears beyond dispute that the plaintiff's choice of forum is accorded significantly less deference where the plaintiff is not a resident of the forum district. *See, e.g., Thayer/Patricof Ed. Funding*, 196 F. Supp. 2d at 31.

### III. DISCUSSION

In resolving the present motion, the Court must determine whether the proposed

transferee court, in this case, the United States District Court for the Southern District of New York, could have originally heard the case. 28 U.S.C. § 1404(a); *see also* 17 James Wm. Moore, *Moore's Federal Practice* § 111.12[1][a] (3d ed. 2003). The Court will briefly consider venue and personal jurisdiction. In addition, the Court will have to ascertain whether the United States District Court for the Southern District of New York has jurisdiction over the subject matter of this case.[5] Based on the language of the statute,[6] case law interpreting that language,[7] and the language's treatment in *Moore's Federal Practice*,[8] the Court will apply Second Circuit law to determine whether the Southern District of New York would have subject matter jurisdiction over this *qui tam* action. If moving Defendants' motion survives the threshold transfer inquiry, the Court will consider the balancing factors outlined above.

---

[5] Moving Defendants did not raise the threshold subject matter jurisdiction inquiry requirement in their Motion to Transfer; nor did Plaintiff-Relator raise the issue in his Opposition. Nonetheless, it is clear that the Court must consider as a threshold matter whether the case "might have been brought" in the Southern District of New York. 28 U.S.C. § 1404(a); *see also Packer*, 728 F. Supp. at 11.

[6] Based on the statutory command, the Court must consider whether the case "might have been brought" in the Southern District of New York. 28 U.S.C. § 1404(a). The language of Section 1404(a) suggests that the Court must apply Second Circuit law in order to ascertain whether the Southern District of New York would have subject matter jurisdiction.

[7] *See Packer*, 728 F. Supp. at 11 (observing that the transferor court must determine whether the transferee court would have subject matter jurisdiction, proper venue, and personal jurisdiction over defendants).

[8] 17 James Wm. Moore, *Moore's Federal Practice* § 111.12[1][a] (3d ed. 2003) (stating that the transferor court must determine whether "*the transferee court* would have had subject-matter jurisdiction") (emphasis added).

A.   *Threshold Inquiry*

1.   *Venue*

Under the False Claims Act, venue is proper in "any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). The parties do not dispute the fact that at least one Defendant can be found, resides, or transacts business in the Southern District of New York. *See, e.g.*, Am. Compl. ¶¶ 28, 35, 40. Accordingly, venue would be proper in the Southern District of New York pursuant to Section 3732(a).

2.   *Personal Jurisdiction*

"[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based on a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Busch v. Buchman*, 11 F.3d 1255, 1258 (5th Cir. 1996); *see also SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997); *In re Application to Enforce Admin. of Subpoenas of SEC v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996). In this case, the False Claims Act explicitly authorizes nationwide service of process. 31 U.S.C. § 3732(a). It follows then that the Southern District of New York could have exercised personal jurisdiction over Defendants if this suit had originally been filed there.

3.   *Subject Matter Jurisdiction*

The False Claims Act explicitly bars jurisdiction over the subject matter of *qui tam* actions "based upon the public disclosure of allegations or transactions," unless the relator is an "original source" of the information underlying the allegation. *See* 31 U.S.C. § 3730(e)(4)(A).

The "public disclosure bar," as it is sometimes called, has caused confusion among the courts—most notably, over the question of how much information can be in the public domain before a suit is barred under the provision. As indicated above, the Court must determine whether the action "might have been brought" in the Southern District of New York. Although, in making this determination, this Court looks to Second Circuit precedent, it appears that the Southern District of New York—and other District Courts in the Second Circuit—have followed the leading "public disclosure bar" case announced by the District of Columbia Circuit, *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994). *See, e.g., United States ex rel. Cosens v. Yale-New Haven Hosp.*, 233 F. Supp. 2d 319, 328 (D. Conn. 2002) (following *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)).[9]

---

[9] In *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1158 (2d Cir. 1993), the Second Circuit seemed to follow the holding announced by the Tenth Circuit in *United States ex rel. Precision Co. v. Koch Industries, Inc.*, 971 F.2d 548 (10th Cir. 1992). *Kreindler*, 985 F.2d at 1158 ("Further, *Precision Co.*, 971 F.2d at 552-53, explicitly repudiates the notion that § 3739(e)(4)(A) bars only actions based 'solely' upon publicly disclosed information, concluding that the statute applies to a '*qui tam* action . . . based in any part upon publicly disclosed allegations or transaction.'"). Subsequent to the Second Circuit's holding in *Kreindler*, the District of Columbia Circuit announced *Springfield Terminal Railway*. In that case, the District of Columbia Circuit noted that its interpretation was

> not in conflict with the approach adopted by the Tenth Circuit in *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552-53 (10th Cir. 1992), *cert. denied*, 122 L. Ed. 2d 742, 113 S. Ct. 1364 (1993). The court there held that "an FCA *qui tam* action even partly based upon publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions." *Id.* Our case presents a different question: whether the information in the public domain rises to the level of "allegations or transactions" at all.

*Springfield Terminal Ry. Co.*, 14 F.3d at 653 n.7. Thus, to the extent that tension could be read into the opinions scribed by the Tenth and District of Columbia Circuits, *compare Precision Co.*, 971 F.2d at 552-53, *with Springfield Terminal Ry. Co.*, 14 F.3d at 655, the District of Columbia

In *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, the United States Court of Appeals for the District of Columbia Circuit spent a considerable amount of time discussing the public disclosure bar. *Springfield Terminal Ry. Co.*, 14 F.3d at 649-57. After chronicling the history of the provision, *id.* at 649-51, the Court of Appeals noted that the public disclosure bar must be "analyzed in the context of [its] twin goals of [1] rejecting suits which the government is capable of pursuing itself, while [2] promoting those which the government is not equipped to bring on its own." *Id.* at 651. The Court of Appeals then delineated a two-part test for determining jurisdiction:

> First, the reviewing court must ascertain whether the "allegations or transactions" upon which the suit is based were "publicly disclosed" in a "criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit or investigation, or from the news media." 31 U.S.C. § 3730(e)(4)(A). If—and only if—the answer to the first question is affirmative, *see Wang v. FMC Corp.*, 975 F.2d 1412, 1416 (9th Cir. 1992), will the court then proceed to the "original source" inquiry, under which it asks whether the *qui tam* plaintiff "has direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B). Under these circumstances, if the *qui tam* plaintiff qualifies as an original source, the action may proceed; if she does not, the action is barred.

*Id.*; *accord United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1158 (2d Cir. 1993) ("It follows that in order to avoid the statutory bar [based on the public disclosure of allegations or transactions], [the relator] must satisfy the limited exception to that

---

Circuit expressly limited its holding in *Springfield Terminal Railway* to interpreting when information rose to the level of an allegation or transaction. *Springfield Terminal Ry. Co.*, 14 F.3d at 653 n.7. Several District Courts in the Second Circuit, implicitly seizing upon this distinction, have followed *Springfield Terminal Railways*'s "calculus" in resolving whether or not a public disclosure constitutes an allegation or transaction. *E.g., United States ex rel. Cosens v. Yale-New Haven Hosp.*, 233 F. Supp. 2d 319, 328 (D. Conn. 2002); *see also United States ex rel. Lissack v. Sakura Global Capital Markets, Inc.*, 2003 U.S. Dist. LEXIS 14600 at *39-40 (S.D.N.Y. Aug. 19, 2003) (listing Second Circuit District Court cases that have followed *Springfield Terminal Ry. Co.*, 14 F.3d at 654).

bar provided by § 3730(e)(4)(A) & (B) to an 'original source of the information.'"). Accordingly, the Court must determine whether the "allegations or transactions" upon which this suit is based have been "publicly disclosed" *before* proceeding to determine (and only if necessary) whether Plaintiff-Relator is an "original source" within the meaning of the statute.

### a. *Public Disclosure of "Allegations or Transactions"*

It is beyond dispute that *some* of the information relied upon by Plaintiff-Relator was "publicly disclosed" within the meaning of the False Claims Act. Indeed, the Amended Complaint explicitly refers to auction forms publicly filed with the Federal Communications Commission. *E.g.*, Am. Compl. ¶¶ 175, 178. Moreover, Defendants note that several newspaper and publication articles disclosed information related to the present action. *E.g.*, Defs.' Mot. to Dismiss at 28-32 (citing articles from *The Washington Post*, *Wire News*, and *Bloomberg News*, among others). "When, as here, *some* information relied upon by the *qui tam* plaintiff is undeniably in the public domain, the task of ensuring that *qui tam* suits are limited to those in which the relator has contributed significant independent information can prove tricky." *Springfield Terminal Ry. Co.*, 14 F.3d at 653.

In an effort to aid lower courts in determining what information constitutes publicly disclosed "allegations or transactions," the *Springfield Terminal Railway* court carefully defined "allegation" and "transaction"; the court also developed a "calculus" for determining whether the statute's public disclosure bar had been triggered:

> [T]he term 'allegation' connotes a conclusory statement implying the existence of provable supporting facts. The term 'transaction' suggestions an exchange between two parties or things that reciprocally affect or influence one another. On the basis of plain meaning, and at the risk of belabored illustration, if $X + Y = Z$, Z represents the allegation of fraud and X and Y represent its essential elements. In order to

> disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed. The language employed in § 3730(e)(4)(A) suggests that Congress sought to prohibit qui tam actions only when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain.

*Springfield Terminal Ry. Co.*, 14 F.3d at 653-54 (citations omitted). The *Springfield Terminal Railway Co.* court went on to observe:

> Fraud requires recognition of two elements: a misrepresented state of facts *and* a true set of facts. The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud.

*Id.* at 655.

In applying the above-stated standards to this case, it is clear that Defendants' representations to the government—the forms that they publicly filed with the FCC—were in the public domain. According to Plaintiff-Relator, these publicly disclosed forms constitute "a misrepresented state of facts." Pl.-Rel.'s Opp'n to Defs.' Mot. to Dismiss at 21 ("Defendants fall far short of demonstrating how revelation of only the 'misrepresented state of facts' – and <u>not</u> the 'true state of the facts' – triggers the jurisdictional bar in this instance."). Standing alone, the publicly disclosed forms represent the *X* or the *Y* of the alleged fraud, but the forms do not constitute both; the truth is missing from the equation. In other words, the forms revealed *X* but not *Y*. Perhaps just as important, Defendants implicitly admit that only one of the two elements of the fraud has been disclosed; to contend otherwise would mean that Defendants would be pointing the Court to information that suggests that they committed fraud.[10]

---

[10] Obviously, Defendants could also contend that the truth is reflected in the forms filed with the FCC. In the event that the forms are accurate, there are a number of procedural devices to weed out merit-less claims, including summary judgment. *See Springfield Terminal Ry. Co.*, 14 F.3d at 655 n.10.

Nonetheless, in their motions to dismiss, Defendants claim that "a brief review of articles appearing in newspapers and other publications demonstrate that the allegations and transactions forming the basis of the Complaint were available in the public domain." Defs.' Mot. to Dismiss at 28. Again, it is clear that $X$ and $Y$ are not revealed in these articles, nor is $Z$. The newspaper and publication articles reveal that the FCC's rules permit wealthy financiers to indirectly participate in the small business auction process; they do not purport to allege that any of the named Defendants committed fraud ($Z$) or were under the *de facto* control of a disqualified entity ($Y$). Defendants themselves argue that the FCC's rules contemplated "that small entities would frequently have to ally themselves and enter into relationships with better-financed and more experienced businesses." *Id.* at 29 n.15. The articles do not state that any of the named Defendants were under the *de facto* control of a disqualified entity; the articles merely echo Defendants' assertion that the FCC's rules permit restricted participation by otherwise disqualified entities. As Plaintiff-Relator correctly recognizes: A review of the articles submitted by Defendants "indicates that those media reports 'echo' only those fraudulent acts that the defendants proffered to the FCC – they do not reveal contradictory facts that would create an inference that defendants devised surrogate 'small businesses' to fraudulently obtain federal discounts reserved for qualified applicants." Pl.-Rel.'s Opp'n to Defs.' Mot. to Dismiss at 14. Consequently, the true set of facts is not revealed ($Y$), nor is a direct allegation of fraud disclosed ($Z$). Accordingly, the Court holds that the public disclosure bar has not been triggered in this case.[11]

---

[11] As a result, the Court need not determine whether or not Plaintiff-Relator is an "original source" of the allegations or transactions within the meaning of the statute's exception. *See Kreindler*, 985 F.2d at 1158.

Defendants nonetheless contend that the "Relator does not point to any non-public fact forming the basis of the allegations in the Complaint." Defs.' Reply in Support of Defs.' Mot. to Dismiss at 11. To be sure, "[t]he relator must possess substantive information about the particular fraud, rather than merely background information which enables a putative relator to understand the significance of a publicly disclosed transaction or allegation." *United States ex rel. Stinsons, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991). However, the District of Columbia Circuit has indicated that district courts should use the traditional tools at their disposal to weed out unsubstantiated allegations:

> To the extent that plaintiff comes forward only with a bare allegation unsupported by proof, the district court has ample traditional tools with which to dismiss the case. *See, e.g.*, Fed. R. Civ. P. 9(b) (failure to state the "circumstances constituting fraud ... with particularity"); Fed. R. Civ. P. 12(b)(6) ("failure to state a claim upon which relief can be granted"); Fed. R. Civ. P. 56 ("no genuine issue as to any material fact," entitling movant "to a judgment as a matter of law").

*Springfield Terminal Ry. Co.*, 14 F.3d at 655 n.10.

In this case, the publicly disclosed forms (X), plus the information revealed in the newspaper and publication articles, would not permit an individual to infer fraud. As Defendants' themselves contend, the FCC

> scrutinized all of the Defendants' applications to participate in the Auctions and affirmatively concluded that the Defendant Bidding Parties qualified as "small" or "very small" businesses. For example, in connection with Defendant BCK/Rivgam's participation in Auction 17, the FCC requested a response from BCK/Rivgam regarding its concern over whether minority owners of BCK/Rivgam exercised *de facto* control when they had entered into loan, financing and limited partnership agreements with BCK/Rivgam that gave its minority owners certain rights . . . .

Defs.' Mot. to Dismiss at 14-15. The FCC was obviously aware that certain otherwise disqualified entities were participating in the bidding process. According to both parties, there is

nothing wrong with indirect participation by otherwise disqualified entities. *See* Defs.' Mot. to Dismiss at 29 n.15; Pl.-Rel. Opp'n to Defs.' Mot. to Dismiss at 11. But the crux of the Complaint is that the FCC was unaware of an alleged "true state of the facts." Therefore, unless the elements of *de facto* control were publicly disclosed, or the allegation of fraud itself publicly made, the public information available to Plaintiff-Relator does not rise to the level to trigger the allegations or transactions bar, as interpreted by the *Springfield Terminal Railway* court. Again, because Plaintiff-Relator is not an "insider" with Defendants, it may be difficult for Plaintiff-Relator to (1) plead fraud with particularity, (2) state a claim upon which relief may be granted, or (3) survive summary judgment. *See Springfield Terminal Ry. Co.*, 14 F.3d at 655 n.10. But district courts possess devices—Federal Rules of Civil Procedure 9(b), 12(b)(6), and 56, respectively—to dispose of cases that fail for those reasons. *Id.* Consequently, the Court holds that the Southern District of New York would have subject matter jurisdiction over Plaintiff-Relator's *qui tam* action.

* * *

The Court has concluded that this action "might have been brought" in the United States District Court for the Southern District of New York.

**B.     "*For Convenience of Parties and Witnesses, In the Interest of Justice . . . .*"**

Pursuant to the statutory command in Section 1404(a), the Court must determine whether the transfer of this action to the Southern District of New York would be in keeping with the "convenience of parties and witness, [and] in the interest of justice." 28 U.S.C. § 1404(a). In applying this standard to the facts of the case, the Court looks to the parties' choice of forum and the six factors identified in *Gemological Institute of America, Inc. v. Thi-Dai Phan*, 145 F. Supp.

2d 68, 71 (D.D.C. 2001):

> [1] the convenience of the witnesses of plaintiff and defendant; [2] ease of access to sources of proof; [3] availability of compulsory process to compel the attendance of unwilling witnesses; [4] the amount of expense for willing witnesses; [5] the relative congestion of the calendars of potential transferor and transferee courts; and [6] other practical aspects of expeditiously and conveniently conducting a trial.

*Gemological Inst. of America, Inc.*, 145 F. Supp. 2d at 71. "A court has broad discretion to determine where the proper balance lies and whether a case should be transferred." *Thayer/Patricof Ed. Funding*, 196 F. Supp. 2d at 31 (citing *Rhees Bros. Inc.*, 869 F. Supp. at 33-34).

### 1.   *The Parties' Choice of Forum*

In considering the parties' choice of forum, "ordinarily [the plaintiff's choice of forum is] afforded great deference, *except when the plaintiff is a foreigner in that forum*." *Id.* (citing *Piper Aircraft*, 454 U.S. at 255-56) (emphasis added). Moreover, even where the plaintiff is a resident of the chosen forum, a court may transfer an action where the "balance of convenience is strongly in favor of the defendant." *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955) ("It is almost a truism that a plaintiff's choice of forum will rarely be disturbed . . . *unless the balance of convenience is strongly in favor of the defendant*.") (emphasis added). In this case, Plaintiff is *not* a resident of his chosen forum; he is a resident of the Commonwealth of Virginia. Am. Compl. ¶ 14. Consequently, the Court will give substantially less deference to Plaintiff's choice of forum.

In all likelihood, Plaintiff-Relator's proximity to this forum has colored his decision to file here. On the other hand, "[t]hirty-nine of the sixty-two Defendants reside in or maintain their principal place of business in the Southern District of New York . . . ." Defs.' Mot. to Transfer at

3. Moreover, nine of the sixty-two Defendants "reside in or maintain their principal places of business in Connecticut." *See id.* at 4. Finally, six of the sixty-two Defendants "reside in or maintain their principal places of business in New Jersey." *See id.* Thus, fifty-four of the sixty-two Defendants "are located in or reside in extremely close proximity to the Southern District of New York." *Id.* Moreover, the remaining Defendants "are either equally close to the District of Columbia and the Southern District of New York or closer to the Southern District of New York." *Id.* Plaintiff-Relator does not dispute these characterizations. *See generally* Pl.-Rel.'s Opp'n to Defs.' Mot. to Transfer.

Given that Plaintiff-Relator is not a resident of this forum, and the vast majority of the Defendants are located in or in close proximity to the Southern District of New York, the Court determines that Defendants' interest in transferring this matter far exceeds Plaintiff-Relator's interests in remaining in the chosen forum.

### 2. *The Convenience of the Witnesses of Plaintiff and Defendant*

There appears to be little doubt that the bulk of the witnesses that could be called or deposed in this fraud action would reside in or live in close proximity to the Southern District of New York. Indeed, Plaintiff-Relator must establish that the "true state of the facts" is different from the facts as stated in Defendants' bid applications. As a result, the bulk of the evidence needed to establish fraud will likely be located in the Southern District of New York and the surrounding areas, where the bulk of Defendants reside. Although Plaintiff-Relator contends that he may call witnesses from the FCC—witnesses that in all likelihood reside in or around the District of Columbia—there is little doubt that this case will turn on evidence acquired in and around the Southern District of New York.

Plaintiff-Relator also argues that the convenience of the witnesses is only a concern to the extent that the witnesses may actually be unavailable for trial in one of the fora. Pl.-Rel.'s Opp'n to Defs.' Mot. to Transfer at 16 (citing authorities from the United States District Court for the District of Columbia). In light of this contention, Plaintiff-Relator argues that, because there is nationwide service of process under the False Claims Act, the availability of the witnesses is not implicated in this proceeding. *Id.* at 17. Therefore, according to Plaintiff-Relator, the Court should disregard the convenience of potential witnesses. *Id.* However, the Court does not find the cases cited by Plaintiff-Relator persuasive—cases where district courts disregarded the convenience of the witnesses merely because there was compulsory service of process available. Moreover, other courts in the District of Columbia District Court have held that "[t]he most critical factor to examine under 28 U.S.C. § 1404(a) is [merely] the *convenience* of the witnesses." *Pyrocap Int'l Corp.*, 259 F. Supp. 2d at 97 (quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1996). This holding is far more consistent with the language of the statute, which only speaks to the *convenience* of the witnesses, not necessarily their availability.[12]

### 3.    *Ease of Access to Sources of Proof*

There is little doubt that *some* of the sources of proof in this case—specifically, Defendants' FCC applications—are located in the District of Columbia. However, the documents that are most relevant to proving the "true state of the facts" are almost certainly

---

[12] The availability of the witnesses—through compulsory service of process—is an important factor when considering a motion to transfer. *See Chung*, 903 F. Supp. at 164. The Court therefore will consider this factor below. However, the Court does not find the cases cited by Plaintiff-Relator persuasive where district courts disregarded the convenience of the witnesses merely because there was compulsory service of process available. In fact, the Court finds this view inconsistent with the language of Section 1404(a), which only speaks to the convenience of the witnesses.

located in and around the Southern District of New York. *See* Defs.' Mot. to Transfer at 11; Pl.-Rel.'s Opp'n to Defs.' Mot. to Transfer at 18-19 (failing to dispute Defendants' assertion that the vast amount of relevant documents are located in and around the Southern District of New York).

Plaintiff-Relator nonetheless cites cases that note that little weight should be attributed to this factor, "[g]iven the sophistication of modern reprographic technology." Pl.-Rel.'s Opp'n to Defs.' Mot. to Transfer at 18 (citing *Thayer/Patricof Ed. Funding*, 196 F. Supp. 2d at 36). While it is certainly true that technology has reduced the significance of this factor, the ease of access still favors Defendants.

### 4. *Availability of Compulsory Process to Compel the Attendance of Unwilling Witnesses*

As the Court has already indicated, the False Claims Act provides for nationwide service of process. *See* 31 U.S.C. § 3731(a). As a result, this factor does not advance or detract from Defendants' Motion to Transfer.

### 5. *The Amount of Expense for Willing Witnesses*

Obviously, if the bulk of relevant witnesses reside in or around the Southern District of New York, the parties could bear considerable expenses bringing them to this forum. Moreover, the Court must be cognizant of the time that the witnesses would be forced to spend away from their businesses or residence. *See, e.g., Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 112 (D. Del. 1992). Accordingly, this factor weighs in favor of transferring the case to the Southern District of New York.

### 6. *The Relative Congestion of the Calendars of Potential Transferor and Transferee Courts*

In their respective memoranda, the parties enter into what can only be described as

statistical warfare over the issue of the relative congestion of this Court's calendar as compared to the Southern District of New York's calendar. Plaintiff-Relator contends that nearly four-times as many cases are filed in the Southern District of New York, representing nearly twice as many cases per judge. Pl.-Rel.'s Opp'n to Defs.' Mot. to Transfer at 20. In their Reply, Defendants argue that the more relevant factor, "the median time to trial in each district," is almost identical. Defs.' Reply, Mot. to Transfer at 17. Moreover, Defendants argue that the Southern District of New York disposes of cases more quickly (before trial). *Id.* Obviously, to a certain extent, statistics are malleable to the will of the relative proponent. Nonetheless, it appears that Plaintiff-Relator will not be impaired by the transfer of this case to the Southern District of New York.

* * *

The balance of the foregoing factors weighs in favor of transferring this case to the United States District Court for the Southern District of New York.[13]

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Transfer is granted. An Order preceded this Memorandum Opinion.

Date: October 2, 2003

COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[13] Plaintiff-Relator has moved to file a Surreply. The Court has considered this matter and has decided to deny Plaintiff-Relator's Motion for Leave to File a Surreply.